IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOY SHAWVER, | ) | CASE NO.4:10-cv-1105 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner | ) | **REPORT AND RECOMMENDATION** |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Joy Shawver's ("Plaintiff" or "Shawver") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Social Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings not inconsistent with this decision.

## I. INTRODUCTION & PROCEDURAL HISTORY

On February 23, 2005, Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income alleging that she became disabled on May 17, 2004. (Tr. 15, 46-50). Plaintiff's date last insured for purposes of her Disability Benefits application was September 30, 2008. (Tr. 51).

Plaintiff's applications were denied initially and upon reconsideration. (Tr. 15-20, 22-24). Plaintiff timely requested and was granted an administrative hearing. (Tr. 25, 29-33). On October 31, 2007, Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge J. Robert Brown (the "ALJ" or "ALJ Brown").[1] (Tr. 679-718). Vocational expert, Ms. Karen Van Dyk, also appeared and testified at the hearing. (Tr. 709-15).

The ALJ issued an unfavorable written decision on January 2, 2008, in which he applied the five-step sequential evaluation,[2] and determined that Plaintiff had not established that she suffered from a medically determined impairment and, therefore, was not disabled. (Tr. 14D-14O). Plaintiff

---

[1] At the time of the hearing, Plaintiff was represented by Attorney Lawrence DeMuth. (Tr. 681).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

requested review of the ALJ's decision from the Appeals Council. (Tr. 12). On March 18, 2010, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner. (Tr. 3-5). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

Shawver, born on February 3, 1969, was thirty-eight years old at the time of the hearing. (Tr. 683). She completed high school and has experience working as a pharmacy technician, journal adjuster, balance transfer clerk, receptionist, and as a shuttle van driver. (Tr. 684, 710).

## II. **DISABILITY STANDARD**

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## III. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if

3

the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. **ANALYSIS**

After completing a review of the record, ALJ J. Robert Brown determined that Shawver was not disabled under the Social Security regulations. (Tr. 14D-14O). At step one of the sequential evaluation analysis, the ALJ found that Shawver had not engaged in substantial gainful activity since her alleged onset date of May 17, 2004. (Tr. 14F). At step two, ALJ Brown ruled that Plaintiff suffered from the following severe impairments: fibromyalgia, headaches, depression, anxiety, and a back disorder. *Id.* However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14I-J). Before moving to step four, the ALJ found that Shawver retained the residual functional capacity ("RFC") to perform simple, unskilled light work. (Tr. 14J). At step four, ALJ Brown determined that Plaintiff could not perform any of her past work. (Tr. 14N). Lastly, the ALJ ruled that Plaintiff's RFC allowed her to perform other jobs which

4

existed in significant numbers in the national economy. (Tr. 14N-14O). Specifically, the ALJ held that Plaintiff could work as a cashier, mail sorter, or a photo copy operator, and therefore, was not disabled. *Id.*

Plaintiff challenges the ALJ's decision on two grounds. First, Shawver maintains that ALJ Brown utilized improper standards in evaluating her fibromyalgia. Plaintiff particularly attacks ALJ Brown's rejection of her treating physicians' opinions, who reported that her fibromyalgia was disabling. Second, Plaintiff asserts that the ALJ failed to properly assess her mental residual functional capacity by discounting the findings of her treating physicians who evaluated her mental health.

### A. Fibromyalgia

1. Diagnosis of Fibromyalgia

Shawver argues that the ALJ failed to properly evaluate her fibromyalgia and the pain and fatigue linked to this disease. Plaintiff points to several of her treating physicians' records showing that she was diagnosed with fibromyalgia and that the condition caused her debilitating pain. Although ALJ Brown found that Plaintiff's fibromyalgia constituted as a severe impairment, he ruled that the objective medical evidence did not support her "claimed level of pain." (Tr. 14L).

Sixth circuit case law confirms that fibromyalgia may impose a severe impairment on a claimant's ability to perform work. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). This disease has been described as "elusive" and "mysterious" because unlike medical conditions which can be verified through objective testing, "fibromyalgia patients present no objectively alarming signs." *Id.* (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815,

5

820 (6th Cir. 1988) and *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003)). Instead, "fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Id.* (*citing Preston*, 854, F.2d at 820).

Diagnosis of fibromyalgia involves a two part process. *Id.* at 244. First, doctors must test the patient for tenderness and pain in a range of focal points. *Id.* Second, physicians must rule out other possible conditions which may be the source of the patient's tenderness and pain through the use of objective medical and clinical tests. *Id.* In the case *sub judice*, ALJ Brown did not contest Plaintiff's diagnosis of fibromyalgia. In fact, ALJ Brown's opinion acknowledges several doctors who diagnosed Shawver with this disease. For example, the ALJ commented that Dr. Edmund MacLaughlin diagnosed Shawver with fibromyalgia in August of 2004. (Tr. 14G). Additionally, ALJ Brown acknowledged that both Dr. Jonathan Patrowicz and Dr. Mark Pellegrino also diagnosed Shawver with fibromyalgia. Although the ALJ did not explicitly state so, Dr. Pellegrino's examination notes reveal that Shawver experienced pain in 16 out of the 18 designated tender point regions examined for fibromyalgia.

The Court rejects Defendant's attempts to question Plaintiff's diagnosis of fibromyalgia. (Def.'s Br. at 12). ALJ Brown's decision demonstrates that he accepted Plaintiff's diagnosis of fibromyalgia and determined that it placed a considerable burden on her ability to work. (Tr. 14F-14G). Therefore, Defendant's identification of evidence undermining Plaintiff's diagnosis is irrelevant given the ALJ's acceptance of Shawver's disease.

6

2. Treating Physicians' Opinions

Plaintiff's diagnosis of fibromyalgia does not alone establish that she is disabled. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Plaintiff must show she suffers from "such a severe case of fibromyalgia as to be totally disabled from working." *Id*. Despite ALJ Brown's acceptance of Shawver's diagnosis of fibromyalgia, Plaintiff argues that the ALJ underestimated the severity of her condition by erroneously discrediting the opinions of her treating physicians. When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(d)(2).

Under the Social Security regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even when the treating physician's opinions are not entitled to controlling weight, "the opinion is not dismissed, and it is still entitled to deference." *Barker-Bair v. Comm'r of Soc. Sec.*, No. 1:06-cv-696, 2008 WL 926569, at *5 (S.D. Ohio Apr. 3, 2008) (*citing Roush v. Barnhart*, 326 F. Supp. 2d 858, 862 (S.D. Ohio 2004)). The ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include:

7

> the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion.

*Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011); 20 C.F.R. § 404.1527(d)(2)-(6). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. § 404.1527(d).

The Sixth Circuit has explained that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers*, 486 F.3d at 242 (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach*, 852 F. App'x at 860 (*quoting Wilson*, 378 F.3d at 543-46).

In this case, Plaintiff was seen by a number of doctors regarding her treatment for fibromyalgia. Shawver began seeing Dr. Patrowicz in August of 2002 and continued treating with him through March of 2005. (Tr. 224-25). Dr. Patrowicz indicated that Plaintiff had a long history of fibromyalgia and that she had been treated with both medicine and physical therapy. Although the doctor commented that Shawver responded well to chronic pain medication, he noted that her

8

ability to sit, stand, walk, lift or carry and handle objects would be limited by whether she was having a good or bad day in terms of the severity of her pain. (Tr. 225).

Thereafter, Plaintiff began treatment with Dr. Edwin MacLaughlin, a rheumatologist, who also diagnosed her with fibromyalgia and prescribed pain medication. (Tr. 211-212). In March of 2005, Dr. MacLaughlin opined that Plaintiff had been disabled since May of 2004 due to her fibromyalgia and chronic pain. (Tr. 207). On August 18, 2005, Shawver underwent a physiatric examination with Dr. Pellegrino, a pain specialist. (Tr. 302-03). Dr. Pellegrino noted pain in 16 out of the 18 tender point regions and diagnosed Plaintiff with fibromyalgia syndrome.

Later, in December of 2006, Shawver began treatment with pain specialist, Dr. Michael Massumi. Although Dr. Massumi did not diagnose Plaintiff with fibromyalgia, he administered a series of injections and blocks to Shawver to help manage her pain. (Tr. 466-84, 495-501). In September of 2007, Dr. Massumi completed a pain assessment form on Plaintiff's behalf. (Tr. 455-56). In the form, Dr. Massumi opined that Shawver's pain "[wa]s present to such an extent as to be distracting to adequate performance of daily activities of work" and that performing tasks such as walking, standing, bending, and stooping would increase Plaintiff's pain "to such a degree as to require increased medication for pain or substantial amounts of bed rest." (Tr. 455). However, Dr. Massumi further commented that treatment "ha[d] been used successfully in cases like [Plaintiff's]." (Tr. 456). On October 2, 2007, Dr. S. Khosla also completed a pain assessment form indicating that physical activity would increase Shawver's pain to a degree that might cause "distraction from the task or even total abandonment of the task." (Tr. 453). Dr. Khosla also stated that his responses were "based on [Shawver's] subjective pain complaints." (Tr. 454).

On appeal, Shawver argues that ALJ Brown failed to give deferential, if not controlling weight, to the opinions of her treating physicians, namely Drs. Patrowicz and Massumi. As an initial matter, the undersigned notes that the ALJ did not analyze the medical opinions under the proper considerations given to fibromyalgia cases. ALJ Brown repeatedly emphasized that Shawver's treating physicians commented that her physical exams showed normal results. (*See* Tr. 14L-14N). For example, the ALJ highlighted that Dr. Patrowicz rated Plaintiff's strength at four out of five in her upper and lower extremities and found that Plaintiff's musculoskeletal exam was normal. (Tr. 14M). In discrediting Plaintiff's alleged severe pain, ALJ Brown also noted that Dr. Pellegrino found that Shawver had no muscle atrophy, and rated her strength at five out of five. (Tr. 14N). Yet, these types of "normal" test results are often found in fibromyalgia cases and do not by themselves undercut a claimant's allegations of disabling pain. *Swain*, 297 F. Supp. 2d at 990 (observing that physical examinations of claimants with fibromyalgia "usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength and normal neurological reactions"). For instance, despite Dr. Pellegrino's normal assessment of Shawver's muscle composition and strength, Dr. Pellegrino remarked that his examination revealed that Shawver experienced pain in 16 out of the 18 tender point regions evaluated in fibromyalgia cases. (Tr. 303).

The ALJ indicated that he was assigning very little weight to the opinions of Drs. Teubner-Rhodes,[3] MacLaughlin, Khosla, and Massumi. ALJ Brown stated that he discredited Dr. MacLaughlin's note indicating that Plaintiff was disabled and unemployable because it was inconsistent with Dr. Patrowicz's findings issued the same month showing that Plaintiff's

---

[3] Dr. Teubner-Rhodes offered opinions regarding Plaintiff's mental faculties. The Court will discuss the ALJ's analysis of his findings later in its Opinion.

musculoskeletal exam was normal.  (Tr. 14M).  Although an ALJ is not bound by conclusory statements offered by a claimant's treating physician indicating that the claimant is disabled, the ALJ must identify sufficient reasons for rejecting them.  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).  As previously mentioned, neither Plaintiff's musculoskeletal exam or strength level signify whether her fibromyalgia pain was disabling, as it is common for claimants with fibromyalgia to retain these physical capabilities.  Therefore, Dr. Patrowicz's evaluation results do not undermine Dr. MacLaughlin's findings, and it was inappropriate for ALJ Brown to reject Dr. MacLaughlin's opinion on this basis.  Although the ALJ noted Dr. Patrowicz's comment that Shawver responded well to pain medications, ALJ Brown did not state how Dr. Patrowicz's other findings affected his decision.  For instance, Dr. Patrowicz also commented that despite Plaintiff's pain appearing to be adequately controlled during her office visits in January and February of 2005, he stressed that Shawver still experienced good and bad days and that her functional abilities would fluctuate depending on this factor.  (Tr. 14M, 225).  The ALJ should not have only emphasized portions of Dr. Patrowicz's opinion without explaining what weight he gave to the remainder of the doctor's opinion.

The ALJ's consideration of Dr. Massumi's findings was also deficient.  ALJ Brown jointly discredited Drs. Massumi's and Khosla's opinions stating that they were "inconsistent with each other and the medical record as a whole."  (Tr. 14N).  However, the ALJ offered no further explanation to justify his determination.  ALJ Brown's brief explanation of his decision to reject Dr. Massumi's opinion, does not provide enough information to the Court to conduct proper judicial review.

11

Although a "lack of compatibility with other record evidence is germane to the weight accorded a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be sufficiently specific to meet the goals of the good reasons rule." *Kalmbach*, 409 F. App'x at 861 (*quoting Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)) (internal quotations omitted).  The ALJ in *Kalmbach* discredited the opinions of the plaintiff's treating physicians by merely stating that they were "not supported by the objective findings" and "appear[ed] to be based entirely on the claimant's subjective complaints." *Id.* The Sixth Circuit found that as a matter of law, the ALJ's stated explanation did not satisfy the "good reasons" requirement, and therefore did not comport with the procedural requirements listed in 20 C.F.R. § 404.1527(d)(2).  *Id.*  Similarly, ALJ Brown's statement that Dr. Massumi's opinion was inconsistent with the medical record does not meet the procedural requirement.

ALJ Brown's second stated reason for discrediting Dr. Massumi's opinion–because it was inconsistent with Dr. Khosla's findings– is also insufficient to satisfy the good reasons requirement. Facially, Drs. Khosla's and Massumi's pain assessments did not materially differ.  Both noted that physical activity (i.e. walking, standing, bending, stooping, moving of extremities, etc.) would significantly increase Shawver's pain.  (Tr. 453, 455).[4]  Likewise, both doctors indicated that Plaintiff would experience some side effects from her pain medication, although Dr. Khosla's findings were more restricting than Dr. Massumi's in that he opined that the medication's side effects would limit the effectiveness of Shawver's ability to work. *Id.*  Thus, the Court cannot

---

[4]Dr. Khosla stated that Plaintiff's pain would be increased to the point of causing distraction from the task if not complete abandonment of the task. (Tr. 453).  On the other hand, Dr. Massumi opined that Shawver's increase of pain would require increased medication or bed rest.  (Tr. 455).

12

ascertain how their opinions substantially differed so as to cause the ALJ to assign very little weight to Dr. Massumi's findings.

The Commissioner's brief focused sharply on Shawver's treatment history, attempting to show that ALJ Brown was entitled to discredit Plaintiff's claims regarding the severity of her pain because her condition was adequately managed. (Def.'s Br. at 13-15). However, the ALJ's discussion of the treating physicians' opinions did not reference much of the evidence upon which Defendant relies. (Tr. 14J-14N). In fact, in regards to Shawver's pain treatment, ALJ Brown's analysis of the doctors' opinions only referenced Dr. Patrowicz's comment that Shawver's condition responded well to pain medication. Although the ALJ noted some of Plaintiff's treatment history during his introductory discussion of the medical evidence (Tr. 14F-14I), he did not later incorporate this evidence into his evaluation of Shawver's treating physicians' opinions. The undersigned is also unpersuaded by Defendant's argument supporting the ALJ's treatment of Drs. Patrowicz's and Massumi's opinions. As noted above, ALJ Brown did not explain what weight he gave to Dr. Patrowicz's findings regarding the volatile nature of Plaintiff's impairment. Likewise, the ALJ's statement that Dr. Massumi's opinion was inconsistent with the medical record and Dr. Khosla's opinions does not, without more explanation, constitute as a good reason for the weight he assigned to the opinion. As the Sixth Circuit stated in *Kalmbach*, "[a] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." 409 F. App'x at 860-61 (*quoting Rogers*, 486 F.3d at 243). Accordingly, remand is warranted due to the ALJ's failure to properly review Shawver's treating physicians' opinion regarding her fibromyalgia.

13

### B.  Mental RFC

Lastly, Shawver objects to ALJ Brown's assessment of her mental limitations.  Plaintiff argues that the ALJ did not properly analyze the opinions of her treating physicians regarding her mental impairments.  The ALJ found that Plaintiff suffered from depression and anxiety.  However, he concluded that despite these conditions, she was still able to perform simple, unskilled work.  Shawver contends that the findings of Drs. Teubner-Rhodes and Clark, and Mr. Brescia suggest that Plaintiff's mental impairments are more restrictive than the ALJ ruled.

On April 25, 2005, Mr. John Brescia, a psychologist, conducted a psychological evaluation on Plaintiff.  (Tr. 230-36).  Mr. Brescia diagnosed Shawver with depressive disorder NOS, various psychosocial and environmental problems, and a global assessment functioning ("GAF") score of 55.  The doctor noted that Shawver's concentration and attention were at least moderately impaired due to her depression.  Mr. Brescia also noted that Shawver's ability to relate to others was also moderately impaired, and her ability to withstand the stresses and pressures associated with day-to-day work tasks was moderately to markedly impaired.  (Tr.  236).

On October 10, 2006, psychiatrist Dr. Michael Clark, performed an outpatient psychiatry consultation with Shawver.  (Tr.  491-94).  Dr. Clark diagnosed Plaintiff with several maladies, including major depression, partially treated, somatoform pain disorder, chronic pelvic pain, chronic diffuse muscular pain, and migraine headaches.  (Tr.  493-94).  He recommended that Shawver attend a chronic pain program at the hospital three days a week for three weeks.

Finally, Dr. Teubner-Rhodes completed a mental residual functional capacity assessment of Shawver in April of 2007.  (Tr. 449-51).  Dr. Teubner-Rhodes opined that Shawver was either moderately or markedly limited in every category of mental functioning.  He further commented that

Shawver's mental impairments "ma[d]e her unable to be reliable for work." (Tr. 451).

Plaintiff asserts that the ALJ did not properly evaluate the effect her mental impairments would place on her productivity and sustainability for performing work. Shawver submits that her treating physicians' opinions demonstrate that she would not be able to withstand the stress or pressure of day-to-day work. The ALJ stated that he gave very little weight to Dr. Teubner-Rhodes's opinion because it was inconsistent with the medical record and Shawver's daily activities. ALJ Brown commented that Shawver's ability to drive and care for her child conflicted with Dr. Teubner-Rhodes's findings. It is not immediately apparent to the Court how Shawver's ability to drive and care for her child contradict Dr. Teubner-Rhodes's findings. Nevertheless, because the Court finds that remand is warranted for other reasons, it is expedient for the ALJ to re-examine his basis for discrediting Dr. Teubner-Rhodes's opinions on remand.

The ALJ cited Mr. Brescia's findings in concluding that Plaintiff was capable of following basic instructions and maintaining attention to perform simple, repetitive tasks. Thus, arguably, the ALJ at least partially credited the findings of Mr. Brescia. Plaintiff has not clearly articulated what portion of Mr. Brescia's opinion warranted more profound restrictions than the ALJ announced. Consequently, the Court can find no reason for ruling that the ALJ's treatment of Mr. Brescia's opinion was in error.

Finally, Shawver challenges the ALJ's treatment of Dr. Clark's findings. Plaintiff suggests that had the ALJ credited Dr. Clark's GAF score of 50, he would have also concluded that Plaintiff was disabled. Plaintiff's argument is based upon the VE's answer to a hypothetical question posed by Plaintiff's counsel to which the VE responded that an individual with a GAF score of 50 would "most likely not" be able to function in a competitive work environment. (Tr. 713). However, it

is worth noting that Dr. Clark's report did not offer any opinion as to how Plaintiff's mental impairments or GAF score, affected her ability to work. The Court is unwilling to accept Plaintiff's contention that a GAF score of 50 automatically eliminates a claimant's ability to work as the Sixth Circuit has explicitly stated otherwise. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006). Given the VE's answer to Plaintiff's hypothetical question and the many differing GAF scores Plaintiff received from various physicians, it would have been beneficial for the ALJ to address how this piece of evidence factored into his review of Dr. Clark's opinion and his ultimate ruling. Remand will offer ALJ Brown another chance to review this evidence and explain what impact it had on Plaintiff's ability to work.

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court recommends that the decision be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

    s/ Kenneth S. McHargh
    Kenneth S. McHargh
    United States Magistrate Judge

Date: July 26, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).